**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

Petitioner,

v.

Marco Hurtado,

Respondent.

Civil No. 00-270 (DWF/AJB)

**ORDER AND MEMORANDUM**

---

Rachel K. Paulose, Assistant United States Attorney, 600 United States Courthouse, 300 Fourth Street South, Minneapolis, MN 55415, counsel for Petitioner.

Katherine Menendez, Assistant Federal Public Defender, 300 Fourth Street South, Suite 107, Minneapolis, MN 55415, counsel for Respondent.

---

This matter is before the Court upon Respondent's objections to Magistrate Judge Arthur J. Boylan's Report and Recommendation dated March 27, 2000. The matter came before Magistrate Judge Boylan on the United States' petition to determine the present mental condition of an imprisoned person under 18 U.S.C. § 4255. The petition alleged that Respondent is presently suffering from a mental disease or defect and is in need of custody and care or treatment in a suitable psychiatric facility. The Respondent has been examined by members of the professional staff at the Federal Medical Center in Rochester, Minnesota, including Andrew Olnes, M.D., since his admission to the Federal Medical Center on December 30, 1999. It is Dr. Olnes' opinion that the Respondent, Marco Hurtado, is presently suffering from a mental disease or defect for which he requires treatment in a suitable psychiatric hospital. The nine-page evaluation by Dr. Olnes is

FILED MAY 0 2 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD MAY 0 2 2000
DEPUTY CLERK

attached to the petition as Petitioner's Exhibit B. The Respondent was advised of his right to refuse transfer to the Mental Health Unit at the Federal Medical Center in Rochester, Minnesota, for psychiatric care and treatment. The Respondent has refused needed care or treatment.

The Court has conducted a *de novo* review of the record and has considered Respondent's objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and (D) and Minn. L.R. 72.1(b)(2). The Court agrees with Magistrate Judge Boylan's conclusions and therefore adopts the Report and Recommendation.

Based upon the Court's *de novo* review of all of the files, records, and proceedings herein, including the objections filed by the Respondent, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. The United States' petition to determine present mental condition of an imprisoned person under 18 U.S.C. § 4245 (Doc. No. 1) is **GRANTED**.

2. The Court finds that the Respondent is suffering from schizophrenia, a mental disease or defect for the treatment of which he is in need of custody for care or treatment at a suitable facility.

3. The Court finds that the Federal Medical Center-Rochester is a suitable facility at which to treat the Respondent's mental disease or defect.

4. Respondent is committed to the custody of the United States Attorney General who shall hospitalize the Respondent for treatment at the Federal Medical Center-Rochester.

Dated: May 2, 2000

DONOVAN W. FRANK
Judge of United States District Court

**MEMORANDUM**

Respondent has objected to the "skeletal" nature of the Report and Recommendation prepared by United States Magistrate Judge Arthur J. Boylan as a result of the evidentiary hearing that occurred on March 23, 2000, at the Federal Medical Center in Rochester, Minnesota.

However, at that hearing, Andrew Olnes, M.D., a staff psychiatrist at Rochester, testified. Moreover, a comprehensive nine-page evaluation is also before the Court in which Dr. Olnes makes it clear by more than a preponderance of the evidence, as required by 18 U.S.C. § 4245(c), that Mr. Hurtado is in urgent need of treatment to prevent a further deterioration in his mental health and condition. Succinctly stated, Dr. Olnes states at page 9 of his report that the failure of Mr. Hurtado to receive this treatment could threaten his life. The record documents an unfortunate, but steady, deterioration in the mental/emotional health and well being of Mr. Hurtado.

This Court is persuaded that the Respondent is suffering from schizophrenia based upon Dr. Olnes' psychological report and the medical files that are into evidence. The facts in the record support Dr. Olnes' conclusions. Specifically, the report outlines a deterioration starting from the point in time when Mr. Hurtado arrived at the FCI Forrest City, Arkansas, facility on October 7, 1997. The Respondent was referred to Dr. Heaney, of Psychological Services, on September 22, 1999, after it was reported that he was very agitated, believing that his family members were being held by the Columbian mafia, even though he had had telephone contact with his family members who offered assurances of their safety. Two days after the interview with Dr. Heaney at the facility in Arkansas, Mr. Hurtado was found crying in his housing unit. He, at that time, complained about a strange smell around his bunk, although no one else could detect it. The Respondent, at that time, stated that he was being watched and picked on by other inmates and verbalized complaints of being very depressed. Mr. Hurtado, at that time, denied thoughts of suicide, but he did admit to uncontrollable crying spells.

On October 8, 1999, Mr. Hurtado was assaulted by unknown inmates in the facility. According to another Columbian inmate, Mr. Hurtado had been recently accusing other inmates of stealing his commissary items, attempting to poison his food, and breaking into his locker. Mr. Hurtado had also told other inmates that his whole family had been murdered. None of these statements could be substantiated by the medical staff or the investigation at Forrest City, Arkansas. At that time, Dr. Heaney concluded that Mr. Hurtado had become paranoid, also thinking that other inmates knew that he had testified for the government. Again, at that time, Mr. Hurtado also told Dr. Heaney that other inmates were stealing from him and putting poison in his food.

On December 6, 1999, Mr. Hurtado manifested agitation and rapid speech. At that time, the Respondent claimed that the staff at the facility at Forrest City, Arkansas, had "made signs" outside of his cell door. On December 21, 1999, Mr. Hurtado was agitated, complaining that others were spraying chemicals through the air vents in his cell. Medical staff at that time became concerned about weight loss and constipation. Mr. Hurtado became increasingly withdrawn. As a result of this more overt evidence of psychotic thinking, the Respondent was placed on a suicide watch and a transfer to a medical center was recommended. On December 22, 1999, Mr. Hurtado remained dismissive with staff, but he was seen to be laughing to himself. Concern about his condition intensified to the extent that he was eating and drinking less and less and continued to refuse a medical assessment. At that time, Dr. Heaney observed "Mr. Hurtado's judgment and insight are significantly impaired."

On December 23, 1999, Mr. Hurtado urinated on the floor of his cell while he was laughing to himself, indicating again that inmate companions were putting chemicals on the food. On December 26, 1999, Mr. Hurtado was observed to carry on conversations with imaginary people after he induced vomiting after a meal.

On December 27, 1999, Mr. Hurtado soaked his boxer shorts with water, and threw them at an inmate companion, running naked in his cell, screaming and yelling that the inmate was an informant. The staff noted additional weight loss and, on the following date, December 28, 1999, he again flooded his cell with hot water and was observed dancing around the cell wearing a sheet as a cloak. At that point in time, Mr. Hurtado was placed in four-point soft restraints.

Mr. Hurtado was accepted on an emergency basis at the Federal Medical Center-Rochester on December 30, 1999. Significantly, during the 11 days he was at the hospital predating the hearing of March 23, 2000, his behavior and condition changed little from that described at Forrest City.

Hallucinations are another characteristic symptom of schizophrenia. The record establishes by a preponderance of the evidence that there have been auditory and olfactory hallucinations. The record also establishes evidence of "grossly disorganized behavior," another characteristic symptom of schizophrenia. Also, Mr. Hurtado's range of emotional expression has run from extreme agitation to a placid denial of difficulties, establishing that the Respondent is experiencing negative symptoms of schizophrenia as well.

There is no persuasive evidence in the record to contradict the expert medical testimony and reports. Dr. Olnes finds that Mr. Hurtado is suffering from a mental disease or defect and that he is in need of custody for care or treatment of that disease or defect.

The record establishes that the Respondent is suffering from a mental disease or defect and that he is in need of custody for care or treatment of that disease or defect. The Federal Medical Center-Rochester is a suitable facility. For those reasons, the Court has adopted the Report and Recommendation of Magistrate Judge Boylan.

D.W.F.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: MAY 0 2 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995